# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 29, 2024

Lyle W. Cayce
Clerk

No. 22-30808

Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia,

*Plaintiff—Appellee*,

*versus*

MSC Mediterranean Shipping Company S.A.,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-1114

Before Jones, Stewart, and Duncan, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

Conti chartered its cargo vessel, the M/V FLAMINIA, to the Mediterranean Shipping Company ("MSC"). During one voyage, the FLAMINIA received three chemical tanks from the Port of New Orleans. The tanks exploded during Atlantic transit, causing extensive damage and three deaths. After a London arbitration panel awarded Conti $200 million, Conti sued to confirm the award in the Eastern District of Louisiana. The district court, ruling it had personal jurisdiction over MSC because the tanks

had been loaded in New Orleans, confirmed the award. MSC appealed, arguing the court lacked personal jurisdiction.

While agreeing with much of the district court's well-stated decision, we must reverse because we conclude the court lacked personal jurisdiction over MSC. We agree with the district court that, when assessing personal jurisdiction to confirm an award under the New York Convention, a court should consider contacts related to the underlying dispute—not only contacts related to the arbitration itself. That holding aligns us with every other circuit to have considered the issue. But we disagree with the district court that MSC waived its personal jurisdiction defense through its insurer's issuance of a letter of understanding that was expressly conditioned on MSC's reserving all litigation defenses. We also disagree that the sole forum contact, the loading of the tanks in New Orleans, conferred specific personal jurisdiction over MSC. That contact arose from the unilateral activities of other parties whose actions are not attributable to MSC.

Accordingly, we REVERSE and REMAND with instructions to dismiss the case for lack of personal jurisdiction.

I.

A.

Conti, a German corporation based in Hamburg, owns the FLAMINIA. In November 2000, Conti chartered the FLAMINIA to MSC, a Swiss corporation based in Geneva. The charterparty required all disputes arising out of the agreement to be arbitrated in London. For the next 12 years, the FLAMINIA carried thousands of cargo containers to and from ports around the world, including the Port of New Orleans.

In June 2012, an employee in the Houston office of MSC (USA)—a wholly-owned New York subsidiary of the Swiss MSC—received a request

from Deltech, an American chemical manufacturer, to ship three tank containers of 80% divinylbenzene ("DVB") out of New Orleans. The MSC (USA) employee booked the DVB for carriage onboard the FLAMINIA via the Port of New Orleans. MSC's office in Antwerp, Belgium approved the booking.

On June 30, 2012, the FLAMINIA arrived at the New Orleans Terminal. The DVB tanks had already been at the terminal nine days, stored outdoors. DVB must be kept at or below 80°F or it will undergo "autopolymerization," resulting in rapid temperature increase and emission of flammable vapors. On July 1, 2012, New Orleans Terminal LLC loaded the DVB onto the FLAMINIA, which departed the next day. Thirteen days later, while transiting the Atlantic Ocean, the DVB tanks exploded. The explosion and ensuing fire killed three crewmembers, damaged the cargo onboard, and caused over $100 million in damages.

B.

Conti brought an arbitration proceeding against MSC in London as required by the charterparty.[1] The arbitration panel ruled that MSC breached the charterparty by failing to comply with the International Maritime Dangerous Goods Code. It awarded Conti about $200 million in total damages.

Conti then sued MSC in the Eastern District of Louisiana seeking to confirm the award pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). *See* 9 U.S.C. § 207. MSC moved to dismiss for lack of

---

[1] Litigation also ensued in the Southern District of New York. MSC and Conti were both found to be free of fault, which was affirmed on appeal. *In re M/V MSC Flaminia*, 72 F.4th 430, 438 (2d Cir. 2023).

personal jurisdiction, arguing that the only forum contact alleged by Conti—approval of the DVB for shipment out of New Orleans—did not arise out of or relate to Conti's confirmation claim.

While that motion was pending, MSC's insurer issued a letter of undertaking ("LOU") to Conti. The LOU promised to pay Conti up to $220 million on any final judgment entered by the Eastern District of Louisiana, provided that Conti did not interfere with MSC's property or bring a separate action in another jurisdiction. The LOU was "given without prejudice to any and all rights or defenses MSC, its agents or affiliates have or may have" in the Eastern District of Louisiana proceedings. It also permitted Conti to return the LOU if Conti decided to discontinue those proceedings or if the court concluded Conti was not entitled to enforce the award in full.

The district court denied MSC's motion to dismiss. It rejected MSC's argument that, for purposes of personal jurisdiction, the only relevant contacts were those relating to the London arbitration. Instead, the court considered MSC's contacts relating to the underlying dispute that led to the arbitration. In reaching that conclusion, the court relied primarily on decisions from four of our sister circuits. *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1287 (10th Cir. 2020) (considering "the defendant's forum activities in connection with the claim that led to the arbitration, as opposed to . . . activities in connection with the arbitration proceeding itself"); *see also Telcordia Tech Inv. v. Telkom S.A. Ltd.*, 458 F.3d 172, 178 (3d Cir. 2006); *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123–24 (9th Cir. 2002). The court also rejected MSC's argument that the Supreme Court's decision in *Badgerow v. Walters* forbids "looking

through" the arbitration petition to the underlying dispute to assess personal jurisdiction. *See* 596 U.S. 1 (2022).

Applying this analysis, the court concluded it had personal jurisdiction over MSC. It reasoned that the underlying claim—breach of the charterparty—related to MSC's forum contacts because "[the DVB] could not have been on the FLAMINIA, and subsequently caused the explosion, if it was not loaded and shipped in New Orleans." Thus, "[t]he loading and eventual shipping of the [DVB] out of New Orleans by MSC constitutes a relationship among the defendant (MSC), the forum (Louisiana), and the litigation (breach of clause 78 [of the charterparty])." Alternatively, the court concluded that MSC waived its personal jurisdiction defense by entering the LOU.

The court therefore granted Conti's motion for judgment on the pleadings and confirmed the arbitral award. MSC now appeals, arguing the court lacked personal jurisdiction over it.

II.

"[W]hether personal jurisdiction can be exercised over a defendant is a question of law and subject to *de novo* review." *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 295 (5th Cir. 2020) (quotation omitted).

III.

To confirm the arbitral award, the district court needed personal jurisdiction over MSC. *See First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 748 (5th Cir. 2012) (due process requires personal jurisdiction to confirm award under the New York Convention). Only specific personal jurisdiction is at issue. *See, e.g.*, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (distinguishing "general or all-purpose jurisdiction, and specific or case-linked jurisdiction" (citation

omitted)).[2] Conti, then, had to show that MSC "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). MSC's forum contacts must be its "own choice and not 'random, isolated, or fortuitous.'" *Id.* at 1025 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). And, crucially, Conti's claim against MSC "must arise out of or relate to" those contacts. *Ibid.* (citation omitted). In other words, for specific personal jurisdiction to exist over MSC, "there must be 'an affiliation between the forum and the underlying controversy.'" *Ibid.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017)).

MSC challenges the district court's personal jurisdictional ruling on several grounds. First, MSC contends that, because an action to confirm an arbitral award is distinct from the underlying dispute, the only relevant contacts concern MSC's refusal to pay the award and not the DVB's shipping from New Orleans. Second, MSC argues that *Badgerow* forbids "looking through" to the underlying dispute to assess personal jurisdiction. Third, MSC argues it did not waive its personal jurisdiction defense by entering the LOU. And, finally, MSC argues that—even considering the underlying dispute—the forum contacts resulted from the unilateral activity of others, not MSC. We address each argument in turn.

A.

We first address MSC's argument that the district court erred by basing its personal jurisdiction analysis on contacts related to the underlying dispute—*i.e.*, the storage, loading, and shipping of the DVB at the Port of New Orleans. MSC contends the court should have limited its analysis to

---

[2] Conti concedes MSC is not subject to general personal jurisdiction in Louisiana.

contacts related only to MSC's refusal to pay the arbitral award. That award, argues MSC, "is no more than a contractual resolution of the parties' dispute," and so any enforcement of the award is distinct from that dispute.

This argument has been rejected by every circuit to have considered it. The Tenth Circuit's decision in *Compañía de Inversiones Mercantiles*, quoted by the district court, is emblematic. *See* 970 F.3d 1269. That case asked whether a Colorado federal court had personal jurisdiction to confirm a Bolivian arbitral award against a group of Mexican companies. *Id.* at 1275–76. The defendants argued that "the only contacts that matter" in a confirmation action "are those relating to the arbitration." *Id.* at 1285. The Tenth Circuit disagreed, concluding that "contracts relating to the *underlying claim* (*i.e.*, the formation and alleged violation of the [contract at issue]) are pertinent." *Id.* at 1285–86 (emphasis added). More specifically, the court explained that the "proper jurisdictional inquiry" in an action to confirm a foreign arbitral award is whether the award beneficiary was injured "by the defendant's forum activities in connection with the claim that led to the arbitration, as opposed to the defendant's forum activities in connection with the arbitration proceeding itself." *Id.* at 1287.

Also instructive is the Second Circuit's decision in *Solé Resort*, which involved a petition asking a New York federal court to vacate a Florida arbitral award involving two foreign companies. 450 F.3d at 101–02.[3] The defendant resisted personal jurisdiction on the ground that the plaintiff's claim was only "about the actions of the arbitrators, not about the facts underlying the dispute that led to the arbitration." *Id.* at 105. The Second Circuit disagreed. "Any arbitration proceeding," the court reasoned,

---

[3] A petition to vacate an arbitral award involves the same personal jurisdiction analysis as a petition to confirm an award. *See Solé Resort*, 450 F.3d at 101.

"is . . . an extension of the parties' contract with one another," and "[w]ithout the contract, the arbitration, and its resultant judgment, a subsequent challenge to that judgment never could exist." *Id.* at 104. Accordingly, the court found "a substantial relationship between a challenge to the arbitrators' decision and the contract that provided for the arbitration." *Ibid.* "[W]hile the arbitrators' actions themselves took place outside New York," the court concluded, "those actions necessarily bear a substantial relationship to the events underlying the contract that created the arbitration." *Id.* at 105.[4]

Six other circuits follow an approach similar to the Tenth and Second Circuits with respect to evaluating personal jurisdiction over actions to confirm arbitral awards. That is, they consider a defendant's contacts related to the underlying dispute that led to the arbitral award, and not only contacts related to the arbitration proceeding itself.[5] While our circuit has not

---

[4] The *Solé Resort* analysis has been adopted by the pertinent Restatement. The authors explain that "[i]n determining whether the requirement of minimum contacts is met, account is not taken only of the arbitration but also of the underlying transaction." Restatement (Third) of U.S. Law of Int'l Com. Arb. § 4.25 note (a)(ii) (citing *Solé Resort*, 450 F.3d 100). Accordingly, "[a]ctions to enforce international arbitral awards do not call for any special personal jurisdictional rules. The adequacy of any particular exercise of personal jurisdiction is determined according to the generally applicable statutory and constitutional standards for the exercise of personal jurisdiction." *Id.* at § 5.19 cmt. (a).

[5] *See Telcordia Tech*, 458 F.3d at 178 (analyzing contacts between defendant and forum relevant to underlying dispute before finding personal jurisdiction to confirm a foreign arbitral award); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 215–16 (4th Cir. 2002) (considering lack of regular shipments between the two companies and contact with the United States to deny personal jurisdiction to confirm foreign arbitral award); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116–17 (6th Cir. 1994) (considering state law tort and contract claims when determining personal jurisdiction to confirm a domestic arbitral award); *Glencore Grain*, 284 F.3d at 1123–24 (analyzing the sale of rice to California distributors in evaluating personal jurisdiction to confirm a foreign arbitral award); *Greenfield Advisors LLC v. Salas*,

addressed this issue head-on, we have cited four of those sister circuit decisions approvingly. *See First Inv. Corp.*, 703 F.3d at 750, 752 n.6 (citing the D.C., Ninth, Fourth, and Third Circuit decisions).

B.

Instead of engaging with the circuit decisions discussed above, MSC claims they have been overridden by the Supreme Court's recent decision in *Badgerow*. We disagree. *Badgerow* addressed subject matter jurisdiction, not personal jurisdiction. And *Badgerow* dealt with domestic arbitration, which is governed by Federal Arbitration Act ("FAA") provisions distinct from the ones applicable to this New York Convention case.

*Badgerow* examined when federal courts have subject matter jurisdiction to confirm or vacate domestic awards under FAA §§ 9 and 10. *See* 596 U.S. at 4. The Court had ruled previously in *Vaden* that, to evaluate subject matter jurisdiction to compel arbitration under FAA § 4, courts must "look through" the agreement to the underlying dispute. *See Vaden v. Discover Bank*, 556 U.S. 49, 53 (2009). *Vaden* turned on § 4's "save for" clause, which told courts to disregard the agreement and look to the parties' controversy. *Id.* at 62; *see* 9 U.S.C. § 4 (federal court may compel arbitration if, "*save for such [arbitration] agreement*, it would have jurisdiction . . . of the subject matter of a suit arising out the controversy between the parties"

---

733 F. App'x 364, 366–67 (9th Cir. 2018) (considering personal contacts between the appellant and state of Washington to find personal jurisdiction to enforce a foreign arbitral award); *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1304–05 (11th Cir. 2000) (considering contacts regarding contractual breach to find personal jurisdiction to enforce a foreign arbitral award); *Creighton, Ltd. v. Gov't of Qatar*, 181 F.3d 118, 127–28 (D.C. Cir. 1999) (considering phone calls, ongoing business, and other communications between Qatar and Tennessee in the underlying dispute to find no personal jurisdiction to confirm foreign arbitral award); *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 817 (D.C. Cir. 2012) (finding no contacts between defendant and forum as to underlying dispute and thus dismissing for lack of personal jurisdiction).

(emphasis added)). Unlike *Vaden*, however, *Badgerow* involved an action to confirm an award, not compel arbitration, and the pertinent provisions—§§ 9 and 10—"contain[ed] none of the statutory language on which *Vaden* turned." *Badgerow*, 596 U.S. at 11.[6] "Most notably," the Court explained, "those provisions do not have Section 4's 'save for' clause." *Ibid.* Accordingly, *Badgerow* held that subject matter jurisdiction to confirm a domestic arbitral award depends, not on the parties' dispute, but only on "the application actually submitted to [the court]." *Id.* at 5.

*Badgerow* does not support MSC's argument. Most fundamentally, *Badgerow* addressed subject matter jurisdiction, not personal jurisdiction. Congress must furnish an independent basis for federal courts to exercise subject matter jurisdiction over FAA cases. *See Badgerow*, 596 U.S. at 8 (citing *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).[7] That is why *Badgerow* had to ferret out the differences between § 4 (which tied subject matter jurisdiction to the underlying controversy) and §§ 9 and 10 (which did not). *See Badgerow*, 596 U.S. at 10–11; *cf. Vaden*, 556 U.S. at 62–63. Personal jurisdiction is a different matter, however. Federal courts have personal jurisdiction so long as defendants may be served under

[6] Section 9 provides that any party to an arbitration may, within a year of the award, apply "to the court so specified [in the agreement] for an order confirming the award," or, if no court is specified, "to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. Section 10 specifies grounds on which an award may be vacated upon application to "the United States court in and for the district wherein the award was made." *Id.* § 10(a).

[7] *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (explaining that the FAA, though "creat[ing] a body of federal substantive law" on arbitration, "yet . . . does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331"); *Lower Co. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922–23 (5th Cir. 2017) (explaining that the FAA "'bestow[s] no federal jurisdiction but rather requir[es] for [access to a federal forum] an independent jurisdictional basis' over the parties' dispute" (quoting *Vaden*, 556 U.S. at 59)).

the state's long-arm statute and due process is satisfied. *See, e.g.*, *Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 220 (5th Cir. 2012).[8] So, *Badgerow* answered a question different from the one before us—one that required examining whether Congress had granted subject matter jurisdiction over FAA proceedings. The question here, by contrast, is whether exercising personal jurisdiction over MSC is "'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316–17 (1945)). Answering that question does not turn on parsing different provisions of the FAA.

Second, even if such an interpretive exercise were called for, the FAA provisions at issue here are meaningfully distinct from those in *Badgerow*. Keep in mind that *Badgerow* involved domestic arbitration governed by FAA Chapter One, *see* 9 U.S.C. §§ 1–16, whereas this case involves foreign arbitration under the New York Convention, governed by FAA Chapter Two, *see id.* §§ 201–208. As the district court carefully explained, Chapter Two lacks any textual indication that forbids looking to the underlying dispute in assessing personal jurisdiction to confirm an award under the Convention.

Start with the basic Chapter Two confirmation provisions. Chapter Two "deem[s]" any Convention-related proceeding to arise under federal law, *id.* § 203, and, in turn, permits a party to file for confirmation in "any court having jurisdiction under [Chapter Two]," *id.* § 207. In other words, Chapter Two broadly confers federal subject matter jurisdiction over

---

[8] The reach of Louisiana's long-arm statute is not at issue here because it permits service up to the limits of due process. *See, e.g.*, *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010). Both parties concede this point.

confirmation actions involving the Convention. *See id.* § 203 (providing "[t]he district courts of the United States . . . shall have original jurisdiction over such an action or proceeding [under the Convention], regardless of the amount in controversy"). Contrast this with Chapter One's narrower grant. It permits a party to seek confirmation only in the court "specified" in the agreement or, if none is specified, in the federal court "in and for the district within which such award was made." *Id.* § 9. As the district court correctly observed, these provisions are "drastically different." The Chapter One provision is, as *Badgerow* explained, narrowly confined to the agreement. Chapter Two's broader provision suggests no such limitation.

Even more telling is Chapter Two's venue provision. An action to confirm a Convention-related award

> may be brought *in any [district] court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought*, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States.

*Id.* § 204 (emphasis added). This provision contains the same "save for" language as the analogous domestic provision addressed in *Vaden* (§ 4), which the Supreme Court held requires looking to the underlying dispute. *See Vaden*, 556 U.S. at 62–63. True, § 204 addresses venue, not personal jurisdiction. But, as the district court pointed out, "it would only make sense for the personal jurisdiction analysis under the Convention to follow that of venue because [otherwise] it would lead to irrational results"—namely, being able to consider the underlying dispute for venue purposes but not for personal jurisdiction. This is another strong clue that Chapter Two, unlike

the Chapter One provisions in *Badgerow*, does not forbid considering the parties' dispute for purposes of assessing jurisdiction.[9]

Finally, MSC cites one line from *Badgerow*, which, it contends, supports its argument. MSC quotes *Badgerow*'s statement that "[an arbitral] award is no more than a contractual resolution of the parties' dispute—a way of settling legal claims." *Badgerow*, 596 U.S. at 9 (citing *Vaden*, 556 U.S., at 63). MSC takes this statement out of context, however. As the next sentence clarifies, the Court was discussing subject matter jurisdiction: "And quarrels about legal settlements—even settlements of federal claims—typically involve only state law, like disagreements about other contracts." *Ibid.* (citing *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 378–82 (1994)). *Badgerow*'s statement, then, has no bearing on this case. The quarrel here involves an arbitral award under the New York Convention—not state law—over which the FAA extends federal subject matter jurisdiction. *See* 9 U.S.C. § 203. Moreover, *Badgerow* was not even addressing personal jurisdiction.[10]

---

[9] MSC argues that the district court's analysis of § 204 conflated venue and personal jurisdiction. We disagree. The court plainly recognized that § 204 is "the Convention's venue statute" and does not address personal jurisdiction. The court's point, rather, was that the Chapter Two provisions (especially § 204) show no intent to foreclose looking to the underlying dispute to assess personal jurisdiction, as did the distinct Chapter One provisions regarding subject matter jurisdiction over confirmation actions.

[10] MSC also relies on an unpublished district court opinion from outside our circuit. *See Balan v. Tesla Motors Inc.*, No. C-19-67 MJP, 2022 WL 2192872, at *3–4 (W.D. Wash. June 16, 2022). After successfully arbitrating an employee defamation claim in San Francisco, Tesla and Elon Musk sued there to confirm the award. *Id.* at *1. The employee sued to vacate the award in a Washington federal court. *Ibid.* The Washington court ruled it lacked personal jurisdiction over Musk because "nothing about the arbitration relate[d] to Washington" and because Musk had not "performed any type of conduct related to the arbitration that promotes business within the State." *Id.* at *3. It is unclear whether the district court's analysis was limited to the arbitration itself or also considered Musk's underlying contacts with Washington. Furthermore, the arbitration did not implicate the

In sum, we disagree with MSC's argument that *Badgerow* prohibits looking to the parties' underlying dispute to determine whether the court had personal jurisdiction over Conti's confirmation action.

C.

Next, we turn to the district court's ruling that MSC waived any challenge to personal jurisdiction when its insurer issued the LOU. Recall that the LOU promised to pay Conti up to $220 million on any final judgment and was "given without prejudice to any and all rights or defenses MSC, its agents or affiliates have or may have." MSC argues the district court erred because the LOU plainly reserved its defenses to Conti's suit, including lack of personal jurisdiction. We agree.

"Louisiana law recognizes broad freedom to contract" and "[c]ontractual intent is determined by the words of the contract." *Luv N' Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016); *see also* LA. CIV. CODE art. 1971 ("Parties are free to contract for any object that is lawful, possible, and determined or determinable."). Contractual provisions like the ones here may be "relevant" to a personal jurisdiction analysis, "but they are not dispositive." *See Haliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 542 (5th Cir. 2019) (considering relevance of "[c]hoice-of-law provisions and forum-selection clauses" to personal jurisdiction analysis). When a party contractually submits to the court's power for a "limited purpose," it does "not waive its personal jurisdiction defense" for issues falling outside that purpose. *Id.* at 541.

The district court ruled that MSC waived its personal jurisdiction defense by entering into the LOU for two reasons. First, the court relied on

New York Convention. So, *Balan* does not clearly support MSC's position and, in any event, is not binding on us.

our decision in *Trafigura Beheer B.V. v. M/T PROBO ELK*, 266 F. App'x 309 (5th Cir. 2007) to find that entering an LOU constitutes consent to jurisdiction. Second, it found that, despite the reservation of defenses, the LOU "implicitly" consented to the Eastern District's jurisdiction by, for instance, agreeing to pay Conti if it refrained from suing MSC anywhere else and stipulating the Eastern District has "exclusive jurisdiction" over LOU-related disputes. We respectfully disagree.

First, *Trafigura* is distinguishable. In that case, "the ship's underwriters entered into a letter of undertaking . . . *agreeing to appear as claimants in the suit* and pay any final judgment." *Id.* at 310 (emphasis added). In other words, *Trafigura*'s LOU explicitly waived personal jurisdiction. MSC's does not. Its LOU contains conditional language pertaining to the district court's jurisdiction. For example, it states it will pay the $220 million "*unless and until* the Proceedings [the dispute over personal jurisdiction and the confirmation action] are finally determined." And MSC agreed to pay only "after all appeals (if any)." The LOU also states that "*[i]n the event* that the United States District Court, Eastern District of Louisiana concludes (in the Proceedings) that you are not entitled to enforce the Awards in full . . . you are at liberty to . . . seek to enforce the Awards in another jurisdiction." This language is quite different from *Trafigura*'s express agreement to "appear as claimants in the suit." 266 F. App'x at 311.

Second, the LOU has no implicit waiver. To the contrary, it states it was "given without prejudice to *any and all rights or defenses* MSC, its agents or affiliates *have or may have* in the Proceedings." This includes the defense of lack of personal jurisdiction, which MSC was litigating when the LOU issued. That should end the waiver inquiry. *See* LA. CIV. CODE art. 2046 ("When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). Putting that aside, however, the parts of the LOU the district court

relied on do not implicitly waive personal jurisdiction. Everything MSC consented to—payment, not suing elsewhere, jurisdiction over LOU-related matters, etc.—was expressly conditioned on the outcome of ongoing litigation over the district court's personal jurisdiction.

In sum, the district court erred by finding that MSC waived its personal jurisdiction defense in the LOU.

D.

Finally, MSC argues that, even if it is proper to consider contacts related to the underlying dispute, the district court erred in finding personal jurisdiction based only on the fact that the DVB shipped from the Port of New Orleans.[11] We agree with MSC because that contact with New Orleans resulted not from MSC's activity but rather that of its subsidiary, MSC (USA), and third parties.

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there[.]" *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) (citing 2 J. Moore & J. Lucas, Moore's Federal Practice ¶ 4.25[6], at 4–272 (2d ed. 1982)).[12] "This presumption of institutional

---

[11] MSC raised this alternative argument in the district court in its motion to dismiss for lack of personal jurisdiction.

[12] *See also, e.g.*, *Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 251 (5th Cir. 2019) ("Generally, 'the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated.'" (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004))); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) ("[T]ypically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other."); *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) ("Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can

independence . . . may be rebutted, however, by clear evidence" that the two corporations are "fused . . . for jurisdictional purposes." *Diece-Lisa*, 943 F.3d at 251 (quoting *Freudensprung*, 379 F.3d at 346) (cleaned up); *see also Hargrave*, 710 F.2d at 1161 (explaining, "so long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other"). In this inquiry, we consider the following factors: "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Diece-Lisa*, 943 F.3d at 251 (citation omitted); *see also Hargrave*, 710 F.2d at 1160 (discussing factors).

As the party invoking jurisdiction, Conti bore the burden of showing, by clear evidence, that MSC and its subsidiary are not distinct corporate entities. *See Diece-Lisa*, 943 F.3d at 251; *Hargrave*, 710 F.2d at 1159. It failed to do so, both in the district court and before us.[13] Indeed, Conti's appellate briefing treats MSC (USA)'s contacts with Louisiana as if they were

---

be the basis of a related corporation's contacts." (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925))); *Southmark Corp. v. Life Invs., Inc.*, 851 F.2d 763, 773–74 (5th Cir. 1988) ("[I]t is well-settled that where . . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent.").

[13] In the district court, Conti argued that MSC (USA) is MSC's general agent whose contacts can be imputed to MSC. It does not press that argument here and has forfeited it. In any event, Conti presented no evidence to support the claim. It merely cited a finding by the arbitration panel that MSC (USA) owned 60% of the stock in its own subsidiary, the New Orleans Terminal LLC. That tells us nothing about the relationship between MSC and MSC (USA). Furthermore, based on uncontroverted record evidence MSC has never had a registered agent for service of process in Louisiana.

MSC's without presenting any argument concerning the lack of corporate distinctness. That is insufficient.

Furthermore, the record suggests MSC and MSC (USA) are in fact distinct entities. While MSC (USA) is wholly owned by MSC,[14] the two corporations have different headquarters—MSC (USA) in New York and MSC in Geneva. They have different officers and directors. And the record does not show that MSC and MSC (USA) failed to observe corporate formalities. To the contrary, the only evidence on that score is the arbitration panel's finding that MSC (USA) followed corporate formalities with its own subsidiary, the New Orleans Terminal LLC. Nor does any evidence show MSC's exercising complete authority over MSC (USA)'s operations. This evidence cannot overcome the presumption of separateness between MSC (USA) and MSC for personal jurisdiction purposes.[15]

---

[14] A parent's ownership of a subsidiary's stock, even 100% of it, does not *ipso facto* impute the subsidiary's contacts to the parent for personal jurisdiction purposes. *See, e.g.*, *Consol. Textile Corp. v. Gregory*, 289 U.S. 85, 88 (1933) (declining to attribute Wisconsin contacts of wholly-owned subsidiary to New York-based parent company); *Cannon Mfg.*, 267 U.S. at 338 (declining to attribute North Carolina contacts of wholly-owned Alabama subsidiary to Maine parent company because the "existence of the Alabama company as a distinct corporate entity [wa]s . . . in all respects observed"); *People's Tobacco Co. v. Am. Tobacco Co.*, 246 U.S. 79, 87 (1918) ("The fact that the company owned stock in the local subsidiary companies did not bring it into the State in the sense of transacting its own business there."); *Peterson v. Chi., R.I. & P.R. Co.*, 205 U.S. 364, 390–94 (1907) (court lacked personal jurisdiction over parent company because the wholly-owned subsidiary controlled its day-to-day operations and personnel decisions).

[15] Additionally, MSC has declared under penalty of perjury that

> it has never had any corporate or operating records in Louisiana; [it] has never had a bank account in Louisiana; [it] has never had a telephone listing, facsimile listing, business listing or post office box in Louisiana; [it] has never exercised any executive, management or corporate functions in Louisiana; [it] has never owned, leased or purchased any immovable property in Louisiana; [it] does not have a registered agent for service of

This means that the dispute's sole contact with the forum—the DVB's shipping from the Port of New Orleans—did not occur as a result of MSC's "own choice." *Ford Motor Co.*, 141 S. Ct. at 1025 (citation omitted). That choice was made by others. The manufacturer, Deltech, chose to ship the DVB out of New Orleans. A Houston-based MSC (USA) employee received the order and booked carriage on the FLAMINIA via New Orleans. A Charleston-based MSC (USA) employee created the stowage plan. And New Orleans Terminal LLC received, stored, and loaded the DVB onto the FLAMINIA. The only putative "contact" involving MSC itself occurred when its Antwerp, Belgium office approved the booking. That action, however, merely screened the booking for conformance with MSC's internal policies and the policies of any port of call.

So, the fact that the DVB was loaded onto the FLAMINIA in New Orleans was the result of "the unilateral activity" of other parties, not MSC. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result . . . of the 'unilateral activity of another party or a third person'" (quoting *Hanson*, 357 U.S. at 253; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984))). The district court thus lacked personal jurisdiction to confirm the London award.

IV.

We agree with much of the district court's well-stated opinion. When assessing personal jurisdiction in a confirmation action under the New York

---

process in Louisiana and has not appointed the Louisiana Secretary of State as its agent for service of process in Louisiana.

Conti contests none of these statements.

Convention, a federal court should consider contacts related to the parties' underlying dispute and not only contacts related to the arbitration proceeding itself. That holding aligns our court with every other circuit to address this issue. Nonetheless, we must ultimately reverse the district court's judgment because (1) MSC did not waive its personal jurisdiction defense by entering into the LOU, and (2) the sole contact with the forum arose, not from MSC's own deliberate activities, but rather from the unilateral activities of others that cannot be attributed to MSC.

Accordingly, we REVERSE the district court's judgment and REMAND with instructions to dismiss for lack of personal jurisdiction.