No. 22-30808

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**CONTI 11. CONTAINER SCHIFFARTS-GMBH & CO. KG M.S., MSC
FLAMINIA,**

Plaintiff-Appellee

**VERSUS**

**MSC MEDITERRANEAN SHIPPING COMPANY S.A.,**

Defendant-Appellant

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF LOUISIANA – NO. 2:22-CV-1114

---

**APPELLEES' PETITION FOR REHEARING**

---

Gary A. Hemphill (Bar #6768)
Jeremy T. Grabill (Bar #34924)
Arthur R. Kraatz (Bar #35194)
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email: gary.hemphill@phelps.com
          jeremy.grabill@phelps.com
          arthur.kraatz@phelps.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................ii

TABLE OF AUTHORITIES ........................................................... iii

STATEMENT OF THE ISSUE FOR PANEL REHEARING ........................1

ARGUMENTS AND AUTHORITIES..............................................2

I.    MSC's Factual Argument Regarding its Subsidiary was
       Twice Waived ............................................................................2

II.   Even if Preserved, MSC's Factual Argument Cannot
       Survive the Standard of Review ...........................................9

CONCLUSION...............................................................................12

CERTIFICATE OF SERVICE .......................................................14

CERTIFICATE OF COMPLIANCE ............................................15

PD.44393282.2

# TABLE OF AUTHORITIES

## Cases

*Benefit Recovery, Inc. v. Donelon,*
  521 F.3d 326 (5th Cir. 2008) ...............................................................9

*Haywood v. Tribeca Lending Corp.,*
  307 F. App'x 869 (5th Cir. 2009) .......................................................8

*In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.,*
  888 F.3d 753 (5th Cir. 2018) .............................................................10

*Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.,*
  456 U.S. 844 (1982)...........................................................................10

*Lewis v. Fresne,*
  252 F.3d 352 (5th Cir. 2001) .............................................................10

*Pullman-Standard v. Swint,*
  456 U.S. 273 (1982).............................................................................10

*Sindhi v. Raina,*
  905 F.3d 327 (5th Cir. 2018) .............................................................8

*Trois v. Apple Tree Auction Ctr., Inc.,*
  882 F.3d 485 (5th Cir. 2018). ...........................................................11

*Unida v. Levi Strauss & Co.,*
  986 F.2d 970 (5th Cir. 1993) .............................................................8

**STATEMENT OF THE ISSUE FOR PANEL REHEARING**

From the first pleading filed by Defendant-Appellant MSC Mediterranean Shipping Company S.A. ("MSC") in this case, this case has been about just one issue: whether personal jurisdiction over MSC in this action to confirm a foreign arbitration award is evaluated based on (a) the contacts between MSC, the forum, and the foreign arbitration proceeding, or (b) the contacts between MSC, the forum, and the underlying dispute giving rise to the arbitration. The District Court held that the latter approach was the correct one. This Court, joining "six other circuits," affirmed on that issue.[1]  Nonetheless, this Court reversed the District Court based on the factual finding that the alleged contacts between MSC, the forum, and the underlying dispute giving rise to the arbitration were not contacts between MSC and the forum, but were instead contacts between the Defendant's subsidiary, MSC (USA), and the forum. It is on this narrow factual issue that Plaintiff-Appellee Conti 11. Container Schiffarts-Gmbh & Co. KG M.S., MSC FLAMINIA ("Conti") now moves for rehearing.

Simply put, MSC's contention that the forum contacts at issue here were not its own but were instead those of its subsidiary, MSC (USA), is an issue that MSC raised for the first time in MSC's reply brief to this Court—MSC did not raise this issue in either the District Court or in its principal brief to this Court. As such, Conti

---

[1] *See* Panel Opinion at p. 8.

has never had an opportunity to respond to that argument and, respectfully, this Court erred in accepting MSC's belated parent-subsidiary argument. By way of this Petition for Rehearing, Conti asks the Court to reject MSC's parent-subsidiary argument because (1) it was waived when MSC failed to raise it in the District Court and again when MSC failed to raise it in its opening brief to this Court, and (2) because it is incorrect as a factual matter.[2]

## ARGUMENTS AND AUTHORITIES

### I.    MSC's Factual Argument Regarding its Subsidiary was Twice Waived

In response to Conti's petition to confirm its $200 million arbitration award against MSC, MSC presented just one defense: lack of personal jurisdiction. That defense was supported by just one argument. According to MSC, specific personal jurisdiction in an action to confirm a foreign arbitration award is only present if the defendant has sufficient forum contacts related solely to the arbitration proceeding. That issue—the proper scope of the personal jurisdiction analysis—consumed essentially all of the parties' briefing below and to this Court.

While MSC never expressly conceded that personal jurisdiction was present under Conti's proposed (and, as this Court has now established, correct) analysis, MSC also devoted no effort to argue that jurisdiction was *not* present under the

---

[2] Had MSC raised this argument before its reply brief on appeal, Conti could have previously briefed this factual issue to the District Court and/or this Court.

correct analysis.  Several statements from MSC's motion to dismiss illustrate this point:

> While it is true that the cargo that exploded was loaded in New Orleans, that does not establish a valid basis for the assertion of personal jurisdiction over MSC in this action, because this action relates only to the enforcement of the foreign arbitral awards, not to the underlying breach of contract claims upon which the awards were based.  In other words, whatever jurisdictional significance the loading of the cargo in New Orleans might have had with respect to the breach of contract claims, it cannot support a claim of personal jurisdiction over MSC for this action to enforce the arbitral awards.[3]

MSC's argument seeking dismissal of the case was clearly focused on the applicable legal standard, not a factual dispute.  The closest that MSC came to disputing the factual predicate for personal jurisdiction under the correct analysis was its statement that "while the loading of the DVB80 containers in New Orleans might have supported specific personal jurisdiction for a breach of contract claim against MSC (although MSC disputes this), it plainly will not support specific personal jurisdiction over MSC in this confirmation action."[4]  But that statement was devoid of any meaningful analysis and certainly devoid of even a *mention* of MSC's newfound argument that the forum contacts belonged to MSC (USA), not MSC.

---

[3] ROA.100.

[4] ROA.112.

At the end of its motion to dismiss below, MSC did make a halfhearted attempt to dispute the factual basis for jurisdiction under the correct analysis.[5]  But that argument was focused on MSC's contention that the breach of contract occurred outside New Orleans.[6]  MSC's discussion of that argument below made no mention of either MSC (USA) or MSC's new parent-subsidiary argument.

MSC's reply brief in support of its motion to dismiss before the District Court said <u>absolutely nothing</u> about whether personal jurisdiction existed under the correct analysis.  MSC recognized that "[t]he primary disagreement between Conti and MSC is with respect to how the second factor [of the personal jurisdiction analysis] is to be evaluated.[7]  MSC's reply brief went on to argue the merits of the legal issue that this Court's panel opinion resolved.  The reply made zero arguments about whether jurisdiction was *factually* present under the correct analysis and made no mention of MSC's parent-subsidiary argument.

Understandably, given MSC's complete failure to make the argument below, the District Court's opinion denying MSC's motion to dismiss described MSC's contacts with the forum without reference to MSC (USA).  The District Court's

---

[5] ROA.113-114.

[6] As Conti has pointed out several times, both the arbitration panel issuing the award and the District Court specifically held that MSC's breach of contract occurred in New Orleans, thus this argument fails on the facts.  *See* ROA.343.

[7] ROA.317.

approach makes perfect sense because MSC had not (to that point) disputed that the relevant contacts were MSC's contacts, as opposed to that of its agent. As most relevant here, the District Court made the specific factual finding that "MSC breached [the contract] when it loaded DVB80 onto the FLAMINIA in New Orleans."[8] That fact supports the exercise of jurisdiction over MSC here.

In its opening brief to this Court, MSC did not assign any errors related to that factual finding. Nor did MSC argue that personal jurisdiction was factually lacking even under the correct standard. Moreover, when reciting the facts of the case, MSC described the underlying facts by reference **only** to MSC, without even one mention of MSC (USA).[9] Additionally, when MSC described "the only forum contact alleged by Conti —the loading of the DVB cargoes in New Orleans" it did so without making any attempt to argue that contact was created by MSC (USA), not MSC. Moreover, after admitting that the District Court's findings of fact are reviewed for clear error, MSC stated that "the facts are not in dispute."[10] MSC then correctly described Conti's jurisdictional argument—"Conti asserted that MSC was subject to specific jurisdiction because it caused the DVB cargoes to be loaded aboard the

---

[8] ROA.343.

[9] *See e.g.* MSC's Opening Brief at p. 5 ("the DVB cargoes were booked for carriage by MSC"; stating that the cargo was "screened for acceptance by MSC"). Indeed, MSC's opening brief does not contain the words "parent," "subsidiary," or even a single mention of MSC (USA).

[10] *Id*. at p 15.

Vessel in New Orleans, and this forum contact was related to the breach of the charter party underlying the foreign arbitral awards"—without even the slightest suggestion that the argument was factually inaccurate.[11]  Of course, the factual allegation Conti made, that *MSC* (as opposed to MSC (USA)) caused the loading of the cargo in New Orleans, eventually became one of the District Court's factual findings.  While MSC proceeded to argue that the fact was legally irrelevant (based on its, now rejected, contention that the personal jurisdiction analysis should focus only on the arbitration proceeding), it never argued that the District Court's factual finding was erroneous.  At the end of its brief, after making no factual arguments whatsoever, MSC summarized its position: "the district court cannot find a valid basis to assert specific jurisdiction over MSC because the sole alleged forum contact—the loading of the DVB cargoes in New Orleans—bears no relation to the enforcement claim asserted on the face of Conti's complaint."[12]  Once again, MSC made no suggestion that the District Court's factual finding—that MSC caused the loading of the cargo in New Orleans—was error.

In its brief to this Court, Conti specifically pointed out the District Court's factual finding that the loading of the cargo in New Orleans was a contact of MSC: "The loading and eventual shipping of the DVB80 out of New Orleans by MSC

---

[11] *Id*. at p. 19.

[12] *Id*. at p. 40.

PD.44393282.2

constitutes a relationship among the defendant (MSC), the forum (Louisiana), and the litigation (breach of clause 78)."[13] At the time Conti's brief was filed, that factual finding of the District Court had not been challenged by MSC below, or by MSC in its principal brief to this Court.

MSC charted a drastically different course in its reply to this Court. There, for the first time in this litigation, it argued that personal jurisdiction was not present because Conti had not established the "purposeful availment" prong of the personal jurisdiction analysis. That argument was based on MSC's newfound parent-subsidiary argument. While MSC failed to acknowledge this, what it was effectively doing was asking this Court to reverse the District Court's factual finding that the loading of the cargo in New Orleans was a contact between MSC (as opposed to its agent) and the forum.

In due course, this Court issued its opinion. In its opinion, the Court rejected every legal argument made by MSC and agreed with Conti and the District Court that the correct jurisdictional analysis must consider contacts between MSC, the forum, and the events giving rise to the dispute underlying the arbitration award.[14] Respectfully, that conclusion should have resulted in the affirmance of the decision

---

[13] Conti's Original brief to this Court, p. 13 (quoting ROA.344).

[14] The Court also held that MSC's issuance of a Letter of Undertaking did not waive its jurisdictional challenge. Conti does not seek rehearing on that issue.

below.  However, the Court went on to hold that the relevant contacts underlying the

District Court's personal jurisdiction holding were contacts of MSC (USA) not MSC

and that, accordingly, jurisdiction was absent on the facts of this case.  Conti seeks

rehearing because MSC's failure to challenge the District Court's contrary factual

finding prevents this Court from reversing that factual finding, which means that the

decision below should be affirmed.

This Court has long held that arguments raised under these circumstances are

waived.  "[W]e have consistently held [that] arguments not raised before the district

court are waived and cannot be raised for the first time on appeal." *Sindhi v. Raina*,

905 F.3d 327, 333 (5th Cir. 2018).  The same is true with respect to arguments first

raised in a reply brief.  *Unida v. Levi Strauss & Co.*, 986 F.2d 970, 976 n.4 (5th Cir.

1993) ("By failing to raise this argument until their reply brief, the Plaintiffs have

waived it."); *Haywood v. Tribeca Lending Corp.*, 307 F. App'x 869, 871 (5th Cir.

2009) ("We cannot consider arguments raised for the first time in a reply brief.").

Indeed, this Court has addressed this exact situation—where a party raised a

wholly new argument for the first time in an appellate reply brief—and it held that:

> We will not consider arguments or evidence that was not
> presented to the district court. *Nissho–Iwai Am. Corp. v.
> Kline*, 845 F.2d 1300, 1307 (5th Cir. 1998).  Raising an
> argument in the district court is therefore the essential
> predicate for a valid appeal. *FDIC v. Mijalis*, 15 F.3d
> 1314, 1327 (5th Cir. 1994).  But, we require a party to do
> more than just raise an argument; the contention must be

> pressed so that the district court has an opportunity to rule on it. *Id*.
>
> Benefit's motion for summary judgment makes explicit that the issue is whether Section 514 preempts Directive 175. The question whether Section 502 preempts the Directive is therefore presented for the first time on appeal, so we do not reach the merits of Benefit's claim. Realizing this hurdle, Benefit seeks to invoke our appellate power through a back door: In its reply brief, it urges that parties do not expect cross-motions for summary judgment to end their case. Regardless of the legal merits of such an expectation, Benefit has waived our review of the dismissal of the case, because arguments cannot be raised for the first time in a reply brief.

*Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008). The situation is precisely the same here. MSC's parent-subsidiary argument was not raised, and was absolutely not pressed, below. Nor did MSC raise the alleged factual dispute, even obliquely, in its opening brief to this Court. Under these circumstances, this Court should have held it waived. Because this Court affirmed the District Court with respect to the only issue properly preserved for and raised on appeal—the legal standard applicable to MSC's motion to dismiss—this Court should grant rehearing and affirm the District Court's judgment in full.

## II.   <u>Even if Preserved, MSC's Factual Argument Cannot Survive the Standard of Review</u>

As MSC correctly conceded in its opening brief, even in the context of a motion to dismiss for lack of personal jurisdiction, this Court reviews the District Court's "underlying jurisdictional findings of fact for clear error. A factual finding

is not clearly erroneous as long as it is plausible in the light of the record read as a whole." *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 778 (5th Cir. 2018); *see also* MSC's Principal Brief at p. 15 (citing same). The Supreme Court itself has been consistent in this respect as well. *See Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 857 n.20 (1982) ("If the Court of Appeals disagreed with the District Court's factual findings, it should not have dismissed them without finding them clearly erroneous."); *Pullman-Standard v. Swint*, 456 U.S. 273, 291–92 (1982) ("Factfinding is the basic responsibility of district courts, rather than appellate courts, and the Court of Appeals should not have resolved in the first instance this factual dispute which had not been considered by the District Court."). Further, "[w]hen a trial court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as the trial court did in this case, it must resolve any factual conflicts in favor of the plaintiff." *Lewis v. Fresne*, 252 F.3d 352, 356 (5th Cir. 2001).

Thus, even if MSC had preserved its factual argument below and properly raised it on appeal, the District Court's factual finding was not subject to reversal. The District Court was required to resolve factual conflicts in Conti's favor and, even then, its factual finding can only be reversed for clear error. "A factual finding is not clearly erroneous as long as it is plausible in the light of the record read as a whole." *In re DePuy*, 888 F.3d at 778.

The District Court's finding that the loading of the subject cargo in New Orleans is a contact between MSC and the forum easily clears this standard. MSC argued in its reply brief, and this Court held, that MSC (USA)'s contacts with the forum could not be imputed to MSC on the basis of their parent-subsidiary relationship in the absence of proof that the two were alter egos of each other. But that is not the argument that Conti would have made if this issue had been properly raised. To the extent that the loading of the cargo in New Orleans is a contact of MSC (USA) instead of MSC (and Conti continues to dispute this), that forum contact is attributable to MSC because MSC (USA) is MSC's agent. "A defendant may be subject to personal jurisdiction because of the activities of its agent within the forum state." *Trois v. Apple Tree Auction Ctr.*, Inc., 882 F.3d 485, 490 (5th Cir. 2018). Ordinarily, the next question would be whether an agency relationship exists between MSC and MSC (USA), but the record on appeal contains the answer to that question. The arbitration panel specifically ruled that "MSC USA acted as MSC's local agent for the purposes of, amongst other things, handling sales relationships with customers, taking bookings, planning stowage and preparing shipping documentation."[15] Moreover, MSC expressly conceded an agency relationship below.[16] Tellingly, MSC's belated argument on this point in its reply brief to this

---

[15] ROA.174.

[16] ROA.101 (identifying MSC (USA) as "MSC's agent in the United States").

Court did not address agency, but only addressed its argument that MSC (USA)'s contacts could not be imputed on the basis of the parent-subsidiary relationship. Thus, even when MSC finally addressed this issue for the first time, it did not even analyze the correct issue.

If MSC had timely raised this issue, Conti would have pointed out to Court that the issue was one of agency, not of corporate parent-subsidiary relationship, and that the fact of agency had been conceded by MSC and definitively established in the binding arbitration award that is part of the record in this case. In other words, the failure of MSC to raise this issue at a time when Conti had a fair opportunity to address it prevented the panel from considering this issue fully in light of Conti's position. While that is one of the reasons that this Court's waiver rules prevent consideration of this argument, it is also clearly a reason to grant rehearing. For all of these reasons, the District Court's factual findings with respect to personal jurisdiction were not even wrong, much less clearly erroneous, and this Court should grant rehearing for the purpose of affirming the District Court's factual findings.

## CONCLUSION

The sole basis for this Court's reversal of the District Court judgment was its reversal of the District Court's factual finding that the loading of the cargo in New Orleans was a forum contact attributable to MSC. Because MSC failed to dispute that factual issue below and failed to assign it as error in its principal brief on appeal,

- 12 -

MSC waived that argument, and this Court should not have even considered whether the District Court's factual findings were correct. However, even if the District Court's factual findings were reviewable in this appeal, they are only reviewable for clear error. The District Court's factual findings easily survive that standard of review and they should be affirmed on rehearing. That would result in the full affirmance of the District Court's judgment.

For the foregoing reasons, Conti respectfully requests that this Court grant rehearing and affirm the District Court's judgment in full.

Respectfully submitted,

BY:  */s/ Arthur R. Kraatz*
       Gary A. Hemphill (Bar #6768)
       Jeremy T. Grabill (Bar #34924)
       Arthur R. Kraatz (Bar #35194)
       PHELPS DUNBAR LLP
       Canal Place | 365 Canal Street, Suite 2000
       New Orleans, Louisiana 70130
       Telephone: 504 566 1311
       Facsimile: 504 568 9130
       Email: gary.hemphill@phelps.com
           jeremy.grabill@phelps.com
           arthur.kraatz@phelps.com

**ATTORNEYS FOR PLAINTIFF-APPELLEE CONTI 11. CONTAINER SCHIFFARTS-GMBH & CO. KG M.S., MSC FLAMINIA**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed on this 12th day of February, 2024 with the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

/s/ Arthur R. Kraatz
Arthur R. Kraatz
Counsel for Plaintiff-Appellee Conti 11.
Container Schiffarts-Gmbh & Co. KG
M.S., MSC FLAMINIA

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Fed R. App. P. 40(b)(1) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 3,119 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Word in Times New Roman 12-point font.

Respectfully submitted,


BY:  */s/ Arthur R. Kraatz*
        Arthur R. Kraatz
        Counsel for Plaintiff-Appellee Conti
        11. Container Schiffarts-Gmbh & Co.
        KG M.S., MSC FLAMINIA

Dated: February 12, 2024

- 15 -

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 29, 2024

Lyle W. Cayce
Clerk

No. 22-30808

Conti 11. Container Schiffarts-GMBH & Co. KG M.S.,
MSC Flaminia,

*Plaintiff—Appellee,*

*versus*

MSC Mediterranean Shipping Company S.A.,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:22-CV-1114

Before Jones, Stewart, and Duncan, *Circuit Judges.*
Stuart Kyle Duncan, *Circuit Judge*:

Conti chartered its cargo vessel, the M/V FLAMINIA, to the Mediterranean Shipping Company ("MSC"). During one voyage, the FLAMINIA received three chemical tanks from the Port of New Orleans. The tanks exploded during Atlantic transit, causing extensive damage and three deaths. After a London arbitration panel awarded Conti $200 million, Conti sued to confirm the award in the Eastern District of Louisiana. The district court, ruling it had personal jurisdiction over MSC because the tanks

had been loaded in New Orleans, confirmed the award. MSC appealed, arguing the court lacked personal jurisdiction.

While agreeing with much of the district court's well-stated decision, we must reverse because we conclude the court lacked personal jurisdiction over MSC. We agree with the district court that, when assessing personal jurisdiction to confirm an award under the New York Convention, a court should consider contacts related to the underlying dispute—not only contacts related to the arbitration itself. That holding aligns us with every other circuit to have considered the issue. But we disagree with the district court that MSC waived its personal jurisdiction defense through its insurer's issuance of a letter of understanding that was expressly conditioned on MSC's reserving all litigation defenses. We also disagree that the sole forum contact, the loading of the tanks in New Orleans, conferred specific personal jurisdiction over MSC. That contact arose from the unilateral activities of other parties whose actions are not attributable to MSC.

Accordingly, we REVERSE and REMAND with instructions to dismiss the case for lack of personal jurisdiction.

## I.

### A.

Conti, a German corporation based in Hamburg, owns the FLAMINIA. In November 2000, Conti chartered the FLAMINIA to MSC, a Swiss corporation based in Geneva. The charterparty required all disputes arising out of the agreement to be arbitrated in London. For the next 12 years, the FLAMINIA carried thousands of cargo containers to and from ports around the world, including the Port of New Orleans.

In June 2012, an employee in the Houston office of MSC (USA)—a wholly-owned New York subsidiary of the Swiss MSC—received a request

from Deltech, an American chemical manufacturer, to ship three tank containers of 80% divinylbenzene ("DVB") out of New Orleans. The MSC (USA) employee booked the DVB for carriage onboard the FLAMINIA via the Port of New Orleans. MSC's office in Antwerp, Belgium approved the booking.

On June 30, 2012, the FLAMINIA arrived at the New Orleans Terminal. The DVB tanks had already been at the terminal nine days, stored outdoors. DVB must be kept at or below 80°F or it will undergo "autopolymerization," resulting in rapid temperature increase and emission of flammable vapors. On July 1, 2012, New Orleans Terminal LLC loaded the DVB onto the FLAMINIA, which departed the next day. Thirteen days later, while transiting the Atlantic Ocean, the DVB tanks exploded. The explosion and ensuing fire killed three crewmembers, damaged the cargo onboard, and caused over $100 million in damages.

## B.

Conti brought an arbitration proceeding against MSC in London as required by the charterparty.[1] The arbitration panel ruled that MSC breached the charterparty by failing to comply with the International Maritime Dangerous Goods Code. It awarded Conti about $200 million in total damages.

Conti then sued MSC in the Eastern District of Louisiana seeking to confirm the award pursuant to the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"). *See* 9 U.S.C. § 207. MSC moved to dismiss for lack of

---

[1] Litigation also ensued in the Southern District of New York. MSC and Conti were both found to be free of fault, which was affirmed on appeal. *In re M/V MSC Flaminia*, 72 F.4th 430, 438 (2d Cir. 2023).

personal jurisdiction, arguing that the only forum contact alleged by Conti—approval of the DVB for shipment out of New Orleans—did not arise out of or relate to Conti's confirmation claim.

While that motion was pending, MSC's insurer issued a letter of undertaking ("LOU") to Conti. The LOU promised to pay Conti up to $220 million on any final judgment entered by the Eastern District of Louisiana, provided that Conti did not interfere with MSC's property or bring a separate action in another jurisdiction. The LOU was "given without prejudice to any and all rights or defenses MSC, its agents or affiliates have or may have" in the Eastern District of Louisiana proceedings. It also permitted Conti to return the LOU if Conti decided to discontinue those proceedings or if the court concluded Conti was not entitled to enforce the award in full.

The district court denied MSC's motion to dismiss. It rejected MSC's argument that, for purposes of personal jurisdiction, the only relevant contacts were those relating to the London arbitration. Instead, the court considered MSC's contacts relating to the underlying dispute that led to the arbitration. In reaching that conclusion, the court relied primarily on decisions from four of our sister circuits. *See Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1287 (10th Cir. 2020) (considering "the defendant's forum activities in connection with the claim that led to the arbitration, as opposed to . . . activities in connection with the arbitration proceeding itself"); *see also Telcordia Tech Inv. v. Telkom S.A. Ltd.*, 458 F.3d 172, 178 (3d Cir. 2006); *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 104 (2d Cir. 2006); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123–24 (9th Cir. 2002). The court also rejected MSC's argument that the Supreme Court's decision in *Badgerow v. Walters* forbids "looking

through" the arbitration petition to the underlying dispute to assess personal jurisdiction. *See* 596 U.S. 1 (2022).

Applying this analysis, the court concluded it had personal jurisdiction over MSC. It reasoned that the underlying claim—breach of the charterparty—related to MSC's forum contacts because "[the DVB] could not have been on the FLAMINIA, and subsequently caused the explosion, if it was not loaded and shipped in New Orleans." Thus, "[t]he loading and eventual shipping of the [DVB] out of New Orleans by MSC constitutes a relationship among the defendant (MSC), the forum (Louisiana), and the litigation (breach of clause 78 [of the charterparty])." Alternatively, the court concluded that MSC waived its personal jurisdiction defense by entering the LOU.

The court therefore granted Conti's motion for judgment on the pleadings and confirmed the arbitral award. MSC now appeals, arguing the court lacked personal jurisdiction over it.

## II.

"[W]hether personal jurisdiction can be exercised over a defendant is a question of law and subject to *de novo* review." *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 295 (5th Cir. 2020) (quotation omitted).

## III.

To confirm the arbitral award, the district court needed personal jurisdiction over MSC. *See First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*, 703 F.3d 742, 748 (5th Cir. 2012) (due process requires personal jurisdiction to confirm award under the New York Convention). Only specific personal jurisdiction is at issue. *See, e.g., Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (distinguishing "general or all-purpose jurisdiction, and specific or case-linked jurisdiction" (citation

omitted)).[2] Conti, then, had to show that MSC "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). MSC's forum contacts must be its "own choice and not 'random, isolated, or fortuitous.'" *Id.* at 1025 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)). And, crucially, Conti's claim against MSC "must arise out of or relate to" those contacts. *Ibid.* (citation omitted). In other words, for specific personal jurisdiction to exist over MSC, "there must be 'an affiliation between the forum and the underlying controversy.'" *Ibid.* (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 262 (2017)).

MSC challenges the district court's personal jurisdictional ruling on several grounds. First, MSC contends that, because an action to confirm an arbitral award is distinct from the underlying dispute, the only relevant contacts concern MSC's refusal to pay the award and not the DVB's shipping from New Orleans. Second, MSC argues that *Badgerow* forbids "looking through" to the underlying dispute to assess personal jurisdiction. Third, MSC argues it did not waive its personal jurisdiction defense by entering the LOU. And, finally, MSC argues that—even considering the underlying dispute—the forum contacts resulted from the unilateral activity of others, not MSC. We address each argument in turn.

## A.

We first address MSC's argument that the district court erred by basing its personal jurisdiction analysis on contacts related to the underlying dispute—*i.e.*, the storage, loading, and shipping of the DVB at the Port of New Orleans. MSC contends the court should have limited its analysis to

---

[2] Conti concedes MSC is not subject to general personal jurisdiction in Louisiana.

contacts related only to MSC's refusal to pay the arbitral award. That award, argues MSC, "is no more than a contractual resolution of the parties' dispute," and so any enforcement of the award is distinct from that dispute.

This argument has been rejected by every circuit to have considered it. The Tenth Circuit's decision in *Compañía de Inversiones Mercantiles*, quoted by the district court, is emblematic. *See* 970 F.3d 1269. That case asked whether a Colorado federal court had personal jurisdiction to confirm a Bolivian arbitral award against a group of Mexican companies. *Id.* at 1275–76. The defendants argued that "the only contacts that matter" in a confirmation action "are those relating to the arbitration." *Id.* at 1285. The Tenth Circuit disagreed, concluding that "contracts relating to the *underlying claim* (*i.e.*, the formation and alleged violation of the [contract at issue]) are pertinent." *Id.* at 1285–86 (emphasis added). More specifically, the court explained that the "proper jurisdictional inquiry" in an action to confirm a foreign arbitral award is whether the award beneficiary was injured "by the defendant's forum activities in connection with the claim that led to the arbitration, as opposed to the defendant's forum activities in connection with the arbitration proceeding itself." *Id.* at 1287.

Also instructive is the Second Circuit's decision in *Solé Resort*, which involved a petition asking a New York federal court to vacate a Florida arbitral award involving two foreign companies. 450 F.3d at 101–02.[3] The defendant resisted personal jurisdiction on the ground that the plaintiff's claim was only "about the actions of the arbitrators, not about the facts underlying the dispute that led to the arbitration." *Id.* at 105. The Second Circuit disagreed. "Any arbitration proceeding," the court reasoned,

---

[3] A petition to vacate an arbitral award involves the same personal jurisdiction analysis as a petition to confirm an award. *See Solé Resort*, 450 F.3d at 101.

"is . . . an extension of the parties' contract with one another," and "[w]ithout the contract, the arbitration, and its resultant judgment, a subsequent challenge to that judgment never could exist." *Id.* at 104. Accordingly, the court found "a substantial relationship between a challenge to the arbitrators' decision and the contract that provided for the arbitration." *Ibid.* "[W]hile the arbitrators' actions themselves took place outside New York," the court concluded, "those actions necessarily bear a substantial relationship to the events underlying the contract that created the arbitration." *Id.* at 105.[4]

Six other circuits follow an approach similar to the Tenth and Second Circuits with respect to evaluating personal jurisdiction over actions to confirm arbitral awards. That is, they consider a defendant's contacts related to the underlying dispute that led to the arbitral award, and not only contacts related to the arbitration proceeding itself.[5] While our circuit has not

---

[4] The *Solé Resort* analysis has been adopted by the pertinent Restatement. The authors explain that "[i]n determining whether the requirement of minimum contacts is met, account is not taken only of the arbitration but also of the underlying transaction." RESTATEMENT (THIRD) OF U.S. LAW OF INT'L COM. ARB. § 4.25 note (a)(ii) (citing *Solé Resort*, 450 F.3d 100). Accordingly, "[a]ctions to enforce international arbitral awards do not call for any special personal jurisdictional rules. The adequacy of any particular exercise of personal jurisdiction is determined according to the generally applicable statutory and constitutional standards for the exercise of personal jurisdiction." *Id.* at § 5.19 cmt. (a).

[5] *See Telcordia Tech*, 458 F.3d at 178 (analyzing contacts between defendant and forum relevant to underlying dispute before finding personal jurisdiction to confirm a foreign arbitral award); *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 215–16 (4th Cir. 2002) (considering lack of regular shipments between the two companies and contact with the United States to deny personal jurisdiction to confirm foreign arbitral award); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1116–17 (6th Cir. 1994) (considering state law tort and contract claims when determining personal jurisdiction to confirm a domestic arbitral award); *Glencore Grain*, 284 F.3d at 1123–24 (analyzing the sale of rice to California distributors in evaluating personal jurisdiction to confirm a foreign arbitral award); *Greenfield Advisors LLC v. Salas*,

addressed this issue head-on, we have cited four of those sister circuit decisions approvingly. *See First Inv. Corp.*, 703 F.3d at 750, 752 n.6 (citing the D.C., Ninth, Fourth, and Third Circuit decisions).

## B.

Instead of engaging with the circuit decisions discussed above, MSC claims they have been overridden by the Supreme Court's recent decision in *Badgerow*. We disagree. *Badgerow* addressed subject matter jurisdiction, not personal jurisdiction. And *Badgerow* dealt with domestic arbitration, which is governed by Federal Arbitration Act ("FAA") provisions distinct from the ones applicable to this New York Convention case.

*Badgerow* examined when federal courts have subject matter jurisdiction to confirm or vacate domestic awards under FAA §§ 9 and 10. *See* 596 U.S. at 4. The Court had ruled previously in *Vaden* that, to evaluate subject matter jurisdiction to compel arbitration under FAA § 4, courts must "look through" the agreement to the underlying dispute. *See Vaden v. Discover Bank*, 556 U.S. 49, 53 (2009). *Vaden* turned on § 4's "save for" clause, which told courts to disregard the agreement and look to the parties' controversy. *Id.* at 62; *see* 9 U.S.C. § 4 (federal court may compel arbitration if, "*save for such [arbitration] agreement*, it would have jurisdiction . . . of the subject matter of a suit arising out the controversy between the parties"

---

733 F. App'x 364, 366–67 (9th Cir. 2018) (considering personal contacts between the appellant and state of Washington to find personal jurisdiction to enforce a foreign arbitral award); *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1304–05 (11th Cir. 2000) (considering contacts regarding contractual breach to find personal jurisdiction to enforce a foreign arbitral award); *Creighton, Ltd. v. Gov't of Qatar*, 181 F.3d 118, 127–28 (D.C. Cir. 1999) (considering phone calls, ongoing business, and other communications between Qatar and Tennessee in the underlying dispute to find no personal jurisdiction to confirm foreign arbitral award); *GSS Grp. Ltd. v. Nat'l Port Auth.*, 680 F.3d 805, 817 (D.C. Cir. 2012) (finding no contacts between defendant and forum as to underlying dispute and thus dismissing for lack of personal jurisdiction).

(emphasis added)). Unlike *Vaden*, however, *Badgerow* involved an action to confirm an award, not compel arbitration, and the pertinent provisions—§§ 9 and 10—"contain[ed] none of the statutory language on which *Vaden* turned." *Badgerow*, 596 U.S. at 11.[6] "Most notably," the Court explained, "those provisions do not have Section 4's 'save for' clause." *Ibid.* Accordingly, *Badgerow* held that subject matter jurisdiction to confirm a domestic arbitral award depends, not on the parties' dispute, but only on "the application actually submitted to [the court]." *Id.* at 5.

*Badgerow* does not support MSC's argument. Most fundamentally, *Badgerow* addressed subject matter jurisdiction, not personal jurisdiction. Congress must furnish an independent basis for federal courts to exercise subject matter jurisdiction over FAA cases. *See Badgerow*, 596 U.S. at 8 (citing *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).[7] That is why *Badgerow* had to ferret out the differences between § 4 (which tied subject matter jurisdiction to the underlying controversy) and §§ 9 and 10 (which did not). *See Badgerow*, 596 U.S. at 10–11; *cf. Vaden*, 556 U.S. at 62–63. Personal jurisdiction is a different matter, however. Federal courts have personal jurisdiction so long as defendants may be served under

---

[6] Section 9 provides that any party to an arbitration may, within a year of the award, apply "to the court so specified [in the agreement] for an order confirming the award," or, if no court is specified, "to the United States court in and for the district within which such award was made." 9 U.S.C. § 9. Section 10 specifies grounds on which an award may be vacated upon application to "the United States court in and for the district wherein the award was made." *Id.* § 10(a).

[7] *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (explaining that the FAA, though "creat[ing] a body of federal substantive law" on arbitration, "yet . . . does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331"); *Lower Co. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 922–23 (5th Cir. 2017) (explaining that the FAA "'bestow[s] no federal jurisdiction but rather requir[es] for [access to a federal forum] an independent jurisdictional basis' over the parties' dispute" (quoting *Vaden*, 556 U.S. at 59)).

the state's long-arm statute and due process is satisfied. *See, e.g.*, *Pervasive Software Inc. v. Lexware GmbH & Co. Kg*, 688 F.3d 214, 220 (5th Cir. 2012).[8] So, *Badgerow* answered a question different from the one before us—one that required examining whether Congress had granted subject matter jurisdiction over FAA proceedings. The question here, by contrast, is whether exercising personal jurisdiction over MSC is "'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.'" *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *Int'l Shoe Co. v. Wash. Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316–17 (1945)). Answering that question does not turn on parsing different provisions of the FAA.

Second, even if such an interpretive exercise were called for, the FAA provisions at issue here are meaningfully distinct from those in *Badgerow*. Keep in mind that *Badgerow* involved domestic arbitration governed by FAA Chapter One, *see* 9 U.S.C. §§ 1–16, whereas this case involves foreign arbitration under the New York Convention, governed by FAA Chapter Two, *see id.* §§ 201–208. As the district court carefully explained, Chapter Two lacks any textual indication that forbids looking to the underlying dispute in assessing personal jurisdiction to confirm an award under the Convention.

Start with the basic Chapter Two confirmation provisions. Chapter Two "deem[s]" any Convention-related proceeding to arise under federal law, *id.* § 203, and, in turn, permits a party to file for confirmation in "any court having jurisdiction under [Chapter Two]," *id.* § 207. In other words, Chapter Two broadly confers federal subject matter jurisdiction over

---

[8] The reach of Louisiana's long-arm statute is not at issue here because it permits service up to the limits of due process. *See, e.g.*, *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010). Both parties concede this point.

confirmation actions involving the Convention. *See id.* § 203 (providing "[t]he district courts of the United States . . . shall have original jurisdiction over such an action or proceeding [under the Convention], regardless of the amount in controversy"). Contrast this with Chapter One's narrower grant. It permits a party to seek confirmation only in the court "specified" in the agreement or, if none is specified, in the federal court "in and for the district within which such award was made." *Id.* § 9. As the district court correctly observed, these provisions are "drastically different." The Chapter One provision is, as *Badgerow* explained, narrowly confined to the agreement. Chapter Two's broader provision suggests no such limitation.

Even more telling is Chapter Two's venue provision. An action to confirm a Convention-related award

> may be brought *in any [district] court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought*, or in such court for the district and division which embraces the place designated in the agreement as the place of arbitration if such place is within the United States.

*Id.* § 204 (emphasis added). This provision contains the same "save for" language as the analogous domestic provision addressed in *Vaden* (§ 4), which the Supreme Court held requires looking to the underlying dispute. *See Vaden*, 556 U.S. at 62–63. True, § 204 addresses venue, not personal jurisdiction. But, as the district court pointed out, "it would only make sense for the personal jurisdiction analysis under the Convention to follow that of venue because [otherwise] it would lead to irrational results"—namely, being able to consider the underlying dispute for venue purposes but not for personal jurisdiction. This is another strong clue that Chapter Two, unlike

the Chapter One provisions in *Badgerow*, does not forbid considering the parties' dispute for purposes of assessing jurisdiction.[9]

Finally, MSC cites one line from *Badgerow*, which, it contends, supports its argument. MSC quotes *Badgerow*'s statement that "[an arbitral] award is no more than a contractual resolution of the parties' dispute—a way of settling legal claims." *Badgerow*, 596 U.S. at 9 (citing *Vaden*, 556 U.S., at 63). MSC takes this statement out of context, however. As the next sentence clarifies, the Court was discussing subject matter jurisdiction: "And quarrels about legal settlements—even settlements of federal claims—typically involve only state law, like disagreements about other contracts." *Ibid.* (citing *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 378–82 (1994)). *Badgerow*'s statement, then, has no bearing on this case. The quarrel here involves an arbitral award under the New York Convention—not state law— over which the FAA extends federal subject matter jurisdiction. *See* 9 U.S.C. § 203. Moreover, *Badgerow* was not even addressing personal jurisdiction.[10]

---

[9] MSC argues that the district court's analysis of § 204 conflated venue and personal jurisdiction. We disagree. The court plainly recognized that § 204 is "the Convention's venue statute" and does not address personal jurisdiction. The court's point, rather, was that the Chapter Two provisions (especially § 204) show no intent to foreclose looking to the underlying dispute to assess personal jurisdiction, as did the distinct Chapter One provisions regarding subject matter jurisdiction over confirmation actions.

[10] MSC also relies on an unpublished district court opinion from outside our circuit. *See Balan v. Tesla Motors Inc.*, No. C-19-67 MJP, 2022 WL 2192872, at *3–4 (W.D. Wash. June 16, 2022). After successfully arbitrating an employee defamation claim in San Francisco, Tesla and Elon Musk sued there to confirm the award. *Id.* at *1. The employee sued to vacate the award in a Washington federal court. *Ibid.* The Washington court ruled it lacked personal jurisdiction over Musk because "nothing about the arbitration relate[d] to Washington" and because Musk had not "performed any type of conduct related to the arbitration that promotes business within the State." *Id.* at *3. It is unclear whether the district court's analysis was limited to the arbitration itself or also considered Musk's underlying contacts with Washington. Furthermore, the arbitration did not implicate the

In sum, we disagree with MSC's argument that *Badgerow* prohibits looking to the parties' underlying dispute to determine whether the court had personal jurisdiction over Conti's confirmation action.

## C.

Next, we turn to the district court's ruling that MSC waived any challenge to personal jurisdiction when its insurer issued the LOU. Recall that the LOU promised to pay Conti up to $220 million on any final judgment and was "given without prejudice to any and all rights or defenses MSC, its agents or affiliates have or may have." MSC argues the district court erred because the LOU plainly reserved its defenses to Conti's suit, including lack of personal jurisdiction. We agree.

"Louisiana law recognizes broad freedom to contract" and "[c]ontractual intent is determined by the words of the contract." *Luv N' Care, Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016); *see also* La. Civ. Code art. 1971 ("Parties are free to contract for any object that is lawful, possible, and determined or determinable."). Contractual provisions like the ones here may be "relevant" to a personal jurisdiction analysis, "but they are not dispositive." *See Haliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 542 (5th Cir. 2019) (considering relevance of "[c]hoice-of-law provisions and forum-selection clauses" to personal jurisdiction analysis). When a party contractually submits to the court's power for a "limited purpose," it does "not waive its personal jurisdiction defense" for issues falling outside that purpose. *Id.* at 541.

The district court ruled that MSC waived its personal jurisdiction defense by entering into the LOU for two reasons. First, the court relied on

---

New York Convention. So, *Balan* does not clearly support MSC's position and, in any event, is not binding on us.

our decision in *Trafigura Beheer B.V. v. M/T PROBO ELK*, 266 F. App'x 309 (5th Cir. 2007) to find that entering an LOU constitutes consent to jurisdiction. Second, it found that, despite the reservation of defenses, the LOU "implicitly" consented to the Eastern District's jurisdiction by, for instance, agreeing to pay Conti if it refrained from suing MSC anywhere else and stipulating the Eastern District has "exclusive jurisdiction" over LOU-related disputes. We respectfully disagree.

First, *Trafigura* is distinguishable. In that case, "the ship's underwriters entered into a letter of undertaking . . . *agreeing to appear as claimants in the suit* and pay any final judgment." *Id.* at 310 (emphasis added). In other words, *Trafigura*'s LOU explicitly waived personal jurisdiction. MSC's does not. Its LOU contains conditional language pertaining to the district court's jurisdiction. For example, it states it will pay the $220 million "*unless and until* the Proceedings [the dispute over personal jurisdiction and the confirmation action] are finally determined." And MSC agreed to pay only "after all appeals (if any)." The LOU also states that "*[i]n the event* that the United States District Court, Eastern District of Louisiana concludes (in the Proceedings) that you are not entitled to enforce the Awards in full . . . you are at liberty to . . . seek to enforce the Awards in another jurisdiction." This language is quite different from *Trafigura*'s express agreement to "appear as claimants in the suit." 266 F. App'x at 311.

Second, the LOU has no implicit waiver. To the contrary, it states it was "given without prejudice to *any and all rights or defenses* MSC, its agents or affiliates *have or may have* in the Proceedings." This includes the defense of lack of personal jurisdiction, which MSC was litigating when the LOU issued. That should end the waiver inquiry. *See* LA. CIV. CODE art. 2046 ("When the words of the contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."). Putting that aside, however, the parts of the LOU the district court

relied on do not implicitly waive personal jurisdiction. Everything MSC consented to—payment, not suing elsewhere, jurisdiction over LOU-related matters, etc.—was expressly conditioned on the outcome of ongoing litigation over the district court's personal jurisdiction.

In sum, the district court erred by finding that MSC waived its personal jurisdiction defense in the LOU.

## D.

Finally, MSC argues that, even if it is proper to consider contacts related to the underlying dispute, the district court erred in finding personal jurisdiction based only on the fact that the DVB shipped from the Port of New Orleans.[11] We agree with MSC because that contact with New Orleans resulted not from MSC's activity but rather that of its subsidiary, MSC (USA), and third parties.

"Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there[.]" *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) (citing 2 J. MOORE & J. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 4.25[6], at 4–272 (2d ed. 1982)).[12] "This presumption of institutional

---

[11] MSC raised this alternative argument in the district court in its motion to dismiss for lack of personal jurisdiction.

[12] *See also, e.g., Diece-Lisa Indus., Inc. v. Disney Enters., Inc.*, 943 F.3d 239, 251 (5th Cir. 2019) ("Generally, 'the proper exercise of personal jurisdiction over a nonresident corporation may not be based solely upon the contacts with the forum state of another corporate entity with which the defendant may be affiliated.'" (quoting *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 346 (5th Cir. 2004))); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) ("[T]ypically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other."); *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) ("Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can

independence . . . may be rebutted, however, by clear evidence" that the two corporations are "fused . . . for jurisdictional purposes." *Diece-Lisa*, 943 F.3d at 251 (quoting *Freudensprung*, 379 F.3d at 346) (cleaned up); *see also Hargrave*, 710 F.2d at 1161 (explaining, "so long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other"). In this inquiry, we consider the following factors: "(1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have separate headquarters, directors, and officers; (3) whether corporate formalities are observed; (4) whether the entities maintain separate accounting systems; and (5) whether the parent exercises complete control over the subsidiary's general policies or daily activities." *Diece-Lisa*, 943 F.3d at 251 (citation omitted); *see also Hargrave*, 710 F.2d at 1160 (discussing factors).

As the party invoking jurisdiction, Conti bore the burden of showing, by clear evidence, that MSC and its subsidiary are not distinct corporate entities. *See Diece-Lisa*, 943 F.3d at 251; *Hargrave*, 710 F.2d at 1159. It failed to do so, both in the district court and before us.[13] Indeed, Conti's appellate briefing treats MSC (USA)'s contacts with Louisiana as if they were

---

be the basis of a related corporation's contacts." (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925))); *Southmark Corp. v. Life Invs., Inc.*, 851 F.2d 763, 773–74 (5th Cir. 1988) ("[I]t is well-settled that where . . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent.").

[13] In the district court, Conti argued that MSC (USA) is MSC's general agent whose contacts can be imputed to MSC. It does not press that argument here and has forfeited it. In any event, Conti presented no evidence to support the claim. It merely cited a finding by the arbitration panel that MSC (USA) owned 60% of the stock in its own subsidiary, the New Orleans Terminal LLC. That tells us nothing about the relationship between MSC and MSC (USA). Furthermore, based on uncontroverted record evidence MSC has never had a registered agent for service of process in Louisiana.

MSC's without presenting any argument concerning the lack of corporate distinctness. That is insufficient.

Furthermore, the record suggests MSC and MSC (USA) are in fact distinct entities. While MSC (USA) is wholly owned by MSC,[14] the two corporations have different headquarters—MSC (USA) in New York and MSC in Geneva. They have different officers and directors. And the record does not show that MSC and MSC (USA) failed to observe corporate formalities. To the contrary, the only evidence on that score is the arbitration panel's finding that MSC (USA) followed corporate formalities with its own subsidiary, the New Orleans Terminal LLC. Nor does any evidence show MSC's exercising complete authority over MSC (USA)'s operations. This evidence cannot overcome the presumption of separateness between MSC (USA) and MSC for personal jurisdiction purposes.[15]

---

[14] A parent's ownership of a subsidiary's stock, even 100% of it, does not *ipso facto* impute the subsidiary's contacts to the parent for personal jurisdiction purposes. *See, e.g.*, *Consol. Textile Corp. v. Gregory*, 289 U.S. 85, 88 (1933) (declining to attribute Wisconsin contacts of wholly-owned subsidiary to New York-based parent company); *Cannon Mfg.*, 267 U.S. at 338 (declining to attribute North Carolina contacts of wholly-owned Alabama subsidiary to Maine parent company because the "existence of the Alabama company as a distinct corporate entity [wa]s . . . in all respects observed"); *People's Tobacco Co. v. Am. Tobacco Co.*, 246 U.S. 79, 87 (1918) ("The fact that the company owned stock in the local subsidiary companies did not bring it into the State in the sense of transacting its own business there."); *Peterson v. Chi., R.I. & P.R. Co.*, 205 U.S. 364, 390–94 (1907) (court lacked personal jurisdiction over parent company because the wholly-owned subsidiary controlled its day-to-day operations and personnel decisions).

[15] Additionally, MSC has declared under penalty of perjury that

it has never had any corporate or operating records in Louisiana; [it] has never had a bank account in Louisiana; [it] has never had a telephone listing, facsimile listing, business listing or post office box in Louisiana; [it] has never exercised any executive, management or corporate functions in Louisiana; [it] has never owned, leased or purchased any immovable property in Louisiana; [it] does not have a registered agent for service of

This means that the dispute's sole contact with the forum—the DVB's shipping from the Port of New Orleans—did not occur as a result of MSC's "own choice." *Ford Motor Co.*, 141 S. Ct. at 1025 (citation omitted). That choice was made by others. The manufacturer, Deltech, chose to ship the DVB out of New Orleans. A Houston-based MSC (USA) employee received the order and booked carriage on the FLAMINIA via New Orleans. A Charleston-based MSC (USA) employee created the stowage plan. And New Orleans Terminal LLC received, stored, and loaded the DVB onto the FLAMINIA. The only putative "contact" involving MSC itself occurred when its Antwerp, Belgium office approved the booking. That action, however, merely screened the booking for conformance with MSC's internal policies and the policies of any port of call.

So, the fact that the DVB was loaded onto the FLAMINIA in New Orleans was the result of "the unilateral activity" of other parties, not MSC. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (explaining the "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result . . . of the 'unilateral activity of another party or a third person'" (quoting *Hanson*, 357 U.S. at 253; *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984))). The district court thus lacked personal jurisdiction to confirm the London award.

## IV.

We agree with much of the district court's well-stated opinion. When assessing personal jurisdiction in a confirmation action under the New York

---

process in Louisiana and has not appointed the Louisiana Secretary of State as its agent for service of process in Louisiana.

Conti contests none of these statements.

Convention, a federal court should consider contacts related to the parties' underlying dispute and not only contacts related to the arbitration proceeding itself. That holding aligns our court with every other circuit to address this issue. Nonetheless, we must ultimately reverse the district court's judgment because (1) MSC did not waive its personal jurisdiction defense by entering into the LOU, and (2) the sole contact with the forum arose, not from MSC's own deliberate activities, but rather from the unilateral activities of others that cannot be attributed to MSC.

Accordingly, we REVERSE the district court's judgment and REMAND with instructions to dismiss for lack of personal jurisdiction.